**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANCIS HOWLAN,**

                           **Plaintiff,**

vs.                                                6:10-cv-1094
                                                         (MAD/ATB)

**HIRERIGHT SOLUTIONS, INC.; USIS**
**COMMERCIAL SERVICES, INC.; and DAC**
**CONSUMERS, INC.,**

                          **Defendants.**

_____

**APPEARANCES:**                                  **OF COUNSEL:**

**FRANCIS HOWLAN**
228 Lampman Road
Broadalbin, New York 12025
Plaintiff *pro se*

**BOND, SCHOENECK & KING, PLLC**        **JONATHAN B. FELLOWS, ESQ.**
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 11, 2010, Plaintiff commenced this action in New York State Supreme Court, Fulton County. *See* Dkt. No. 1. Plaintiff, who was represented by counsel at the time the complaint was filed, asserted claims of negligence and libel. *See id.* On September 13, 2010, Defendants removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Currently before the Court is Defendants' second motion for summary judgment. *See* Dkt. No. 26.

## II. BACKGROUND[1]

Defendant HireRight Solutions Inc. ("HireRight")[2] assembles information for the purposes of furnishing reports to third parties.  Among other things, Defendant HireRight provides potential employers with an applicant's employment history and a criminal background check. Plaintiff is a retired truck driver.  *See* Dkt. No. 26-3 at ¶ 1.  Plaintiff retired in September of 2009 because he was finally eligible to collect a pension.  *See id.* at ¶ 2.  Thereafter, Plaintiff applied for Social Security Disability benefits, and began receiving them as of November 2010.  *See id.* at ¶ 3.

According to Plaintiff, six companies would not hire him in 2009 or 2010 (immediately prior to and after his retirement) because they thought that he was a sex offender.  *See id.* at ¶ 4. The following are the companies that Plaintiff has identified: (1) Target; (2) Gulf; (3) National Freight; (4) Cardinal; (5) Swift; and (6) Air Liquid.  *See id.*  Plaintiff alleges that he was not hired by these companies because of statements that Defendant HireRight made in reports that it provided to these companies.  *See id.* at ¶ 5.  Plaintiff claims that, from 2001 through April 2010, Defendant HireRight published and distributed false and malicious information relating to Plaintiff.  In the complaint, Plaintiff claims that "said false and defamatory statement was published by the defendants that the plaintiff . . . committed criminal transgressions in various counties of New York State among other false and malicious publications indicated the plaintiff's name, date of birth and social security number matched the plaintiff as a sex offender."  *See* Dkt. No. 1 at ¶ 12.  Plaintiff claims that Defendants' actions were done intentionally and with malice.

---

[1] Unless otherwise noted, the facts set forth in this opinion are not in dispute.

[2] Defendants assert that HireRight was formerly known as USIS Commercial Services, Inc.  Defendants further assert that DAC Consumers, Inc. is not a legal entity.

### III. DISCUSSION

**A.     Summary judgment standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594,

30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, 'a *pro se* party's 'bald assertion,' completely unsupported by evidence' is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B.   Statute of limitations

The statute of limitations in New York for defamation is one year from the date of the publication of the statement. *See* N.Y. C.P.L.R. § 215(3). "[U]nder the 'single publication rule', a reading of libelous material by additional individuals after the original publication date does not change the accrual date for a defamation cause of action but, rather, the accrual date remains the time of the original publication." *Gelbard v. Bodary*, 270 A.D.2d 866, 867 (4th Dep't 2000) (quotation and other citations omitted). An exception to the single publication rule applies when a defamatory statement is "reissued" or "republished," which gives rise to a new limitations period. *See Gold v. Berkin*, No. 00 Civ. 7940, 2001 WL 121940, *3 (S.D.N.Y. Feb. 9, 2001) (citations omitted). This exception, however, does not apply to statements published online or otherwise continuously available to the public. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89-90 (2d Cir. 2003) (citation omitted); *see also Firth v. State*, 98 N.Y.2d 365, 370 (2002); *Young*

4

*v. Suffolk County*, 705 F. Supp. 2d 183, 212 (E.D.N.Y. 2010) ("[U]nder the single publication rule, the fact that a story remains available online does not restart the statute of limitations" (citation omitted)).

In the present matter, Plaintiff's complaint failed to allege the identity of the individuals or entities to which Defendant HireRight had purportedly published the allegedly false and defamatory statement – specifically, that Plaintiff is a "sex offender." As such, Defendant HireRight served Plaintiff interrogatories asking him to identify those individuals or entities alleged to have received these defamatory statements. *See* Dkt. No. 26-5 at Exhibit "A." In Plaintiff's response to Defendants' interrogatories, Plaintiff identified six companies that allegedly failed to hire him as a truck driver during 2009. *See id.* at Exhibit "B."

In addition to interrogatories, Defendant HireRight served a document request on Plaintiff asking for all correspondence Plaintiff had with potential employers during the prior five years and for all documents he claims were published by Defendant HireRight. *See id.* at Exhibit "C." In response to this request, Plaintiff produced no documents regarding any application for employment. Further, the only document he produced in response to the discovery request was the April 5, 2010 file disclosure report that Defendant HireRight had provided directly to Plaintiff at his specific request. *See id.* at Exhibits "B" & "D." Plaintiff acknowledged at his deposition that he had obtained this April 5, 2010 file disclosure report directly from Defendant HireRight. *See id.* at Exhibit "G" at 35-37, 59.

Following Plaintiff's deposition, Defendant HireRight served subpoenas on all of the potential employers Plaintiff had identified during the course of discovery. These subpoenas sought two types of documents: first, the subpoenas sought any records regarding employment applications by Plaintiff from August 10, 2009 through the present; and second, the subpoenas

5

sought any records regarding Plaintiff that had been provided by Defendants to the potential employers from August 10, 2009 through the present. *See id.* at Exhibits "H" - "O." Of the six potential employers identified by Plaintiff, five indicated that they had no employment application records regarding Plaintiff. *See id.* Cumberland Farms, Inc, however, indicated that it had received an employment application from Plaintiff in 2006 and provided Defendants with a copy. *See id.* at Exhibit "J." All of the potential employers that Plaintiff identified as having rejected his application for employment because of Defendants' alleged conduct indicated that they did not have any "documents [or] electronically stored information" provided by Defendants regarding Plaintiff. *See id.* at Exhibits "H" - "O."

Moreover, Defendants have provided the Court with a copy of Plaintiff's Consumer Inquiry History Report that provides all times between 2001 and the present when a potential employer or Plaintiff has requested a Criminal Record Information report from them. *See* Dkt. No. 26-6 at Exhibit "B."[3] The report shows that this information was most recently provided to a potential employer – Old Dominion Freightlines – on December 3, 2008. *See id.* at HR 193-95. Although the report indicates that this information was also requested on April 5, 2010, it was Plaintiff who requested and directly received this information. *See id.*; *see also* Dkt. No. 26-6 at ¶ 20.

---

[3] In support of their motion for summary judgment, Defendants provided the declaration of Linda Rose, who is a Consumer Relations Associate and a Custodian of Records for Defendant HireRight. *See* Dkt. No. 26-6 at ¶ 1. According to Ms. Rose, whenever one of Defendant HireRight's customers seeks a report on a subject, the information is entered into a database. Therefore, Defendant HireRight can produce a "Consumer Inquiry History Report" indicating when any reports were provided about an individual subject, such as Plaintiff. *See id.* at ¶ 6. Ms. Rose included a copy of her search of Defendant HireRight's records concerning Plaintiff. *See id.* at Exhibits "A" - "B."

These business records establish that Defendants provided no Criminal Record Information reports to third parties concerning Plaintiff in the one year prior to commencement of this action on August 11, 2010. *See Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 312-14 (2d Cir. 2008) (holding that contemporaneous business records are admissible as an exception to the hearsay rule and may be used to support a motion for summary judgment); *Attenborough v. Construction and General Building Laborers' Local 79*, 691 F. Supp. 2d 372, 383 (S.D.N.Y. 2009) (holding that a declaration may contain business records as exhibits). The only allegedly false statement or report that Plaintiff was able to produce during discovery was the Criminal Record Information report that he requested on April 5, 2010, which was sent directly to him by Defendant HireRight. As such, Defendants have established that they did not make any allegedly false statements to third parties during the one year prior to the commencement of this action. *See Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (holding that to recover in libel under New York law, the plaintiff must establish that the defamatory statement was, among other things, published to a third party through the defendant's negligence or actual malice) (citations omitted).

Since Defendants met their burden, Plaintiff has the burden to identify admissible evidence sufficient to create a genuine issue of material fact that Defendants published one or more reports to a third party in the one-year period prior to the commencement of his case. *See Celotex Corp.*, 477 U.S. at 323 (citation omitted). The only evidence that Plaintiff has produced is his own testimony in which he claims to have spoken with potential employers in mid-to-late 2009 who told him that they would not hire him because a report from Defendants identified him as a felony sex offender. *See* Dkt. No. 26-5 at Exhibit "G." Plaintiff did not depose these alleged potential employers or attempt to produce any records that these potential employers allegedly

7

relied upon. Since Plaintiff has failed to produce any admissible evidence to create a question of fact, Defendants have established that their motion for summary judgment should be granted. *See Attenborough*, 691 F. Supp. 2d at 389 (finding that a *pro se* plaintiff could not rely on the inadmissible hearsay of a potential employer to support his Title VII retaliation claim) (citation omitted).

In his response to Defendants' motion, Plaintiff provides only his sworn affidavit and merely restates his original allegation that, "[f]ollowing the repeated publication of the defendant's reports, the companies listed on Schedule 'A' attached refused to employ me, because of what was circulated from the defendant[']s reports." *See* Dkt. No. 29 at ¶ 7. Further, Plaintiff alleges that "Anthony Melton of National Freight" and "Cardinal Freight's representative Chris" told him that filling out an application with their companies would be "a waste of time." *See id.* at ¶¶ 8-9. Again, these hearsay assertions are insufficient to create an issue of material fact for trial. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (holding that "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial" (citation omitted)).

Moreover, although in certain circumstances a plaintiff may rely on the complaint to oppose a motion for summary judgment so long as it is "verified" and based on his personal knowledge, *see Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001), the complaint in the present matter provides only conclusory allegations with insufficient factual assertions to create a genuine issue of material fact. *See* Dkt. No. 1. Considering all of the evidence in the light most

favorable to Plaintiff, who is proceeding *pro se*, the Court finds that Defendants have established that this matter is barred by New York's one-year statute of limitations.

Based on the foregoing, the Court grants Defendants' motion for summary judgment.

**C.    Merits of Plaintiff's libel claim**

In the alternative to their statute of limitations arguments, Defendants argue that Plaintiff's libel claim fails on the merits.

Defamation is defined as "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (internal quotations and citations omitted). When such a statement is expressed in writing, the common law cause of action is for libel. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (citation omitted). Under New York law, a cause of action for libel requires a plaintiff to plead the following: "(1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to the defendant's negligence (or actual malice, depending on the status of the person libeled); and (4) special damages or *per se* actionability." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)).

Even if Plaintiff could establish that Defendants had published to a third party the April 5, 2010 Criminal History Report that Plaintiff requested, his claim still fails because the Criminal History Report does not contain any false statements. The Criminal History Report contains a series of eleven different reports on different searches of criminal records performed by

9

Defendant HireRight. *See* Dkt. No. 26-6 at Exhibit "E" at HR 12-22. The record shows that Defendant HireRight conducted national, state, and local criminal record searches, including searches to determine whether Plaintiff was listed as a sex offender in any such jurisdiction. *See id.* After each search Defendant HireRight conducted, there is the following search result entry: "NO RECORD FOUND IN JURISDICTION." *See id.* As is plain on its face, these entries included in the Criminal History Report indicate that Defendants were unable to find any criminal conviction for Plaintiff in the jurisdictions searched. Therefore, even if Defendants published this report to a third party, the only information it provided is that they were unable to find any criminal convictions for Plaintiff.

Plaintiff, for some reason, believes that this language indicates that he is a sex offender in another jurisdiction, *i.e.*, one not included in the report. *See* Dkt. No. 26-5 at Exhibit "E" at 71-72, 76-78. Plaintiff's unreasonable interpretation of this statement, which is in essence a claim of libel by implication, is insufficient to sustain his libel cause of action. *See Rappaport v. VV Pub. Corp.*, 163 Misc. 2d 1, 6 (N.Y. Sup. 1994) (holding that, "[i]n evaluating plaintiff's assertions, this court is constrained to interpret the challenged language from the viewpoint of the average reader, without straining to find a defamatory meaning beyond the natural and ordinary meaning of the language at issue" (citing *Aronson v. Wiersma*, 65 N.Y. 2d at 594, 493 N.Y.S.2d 1006, 483 N.E. 2d 1138; *James v. Gannett*, 40 N.Y. 2d at 419–20, 386 N.Y.S. 2d 871, 353 N.E. 2d 834; *Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y. 2d 435, 440, 199 N.Y.S. 2d 33, 166 N.E. 2d 319)).

As such, the Court finds as a matter of law that the alleged libelous statements are not reasonably capable of being read as defamatory; and, therefore, the Court grants Defendants' motion for summary judgment on this alternative ground.

**D.      Negligent misrepresentation**

Plaintiff's first cause of action claims to be a cause of action for negligence. *See* Dkt. No. 1. This cause of action relies on the same facts as the second cause of action, which claims to be a cause of action for libel. *See id.* Although Defendants treated the second cause of action as simply a reiteration of the libel claim, the fact that the first cause of action claims that Defendants exhibited a "lack of care and omission of duty" leads the Court to believe that this cause of action is attempting to allege negligent misrepresentation. In light of Plaintiff's *pro se* status, the Court will address the merits of this claim.

In order to recover on a claim for negligent misrepresentation under New York law, a plaintiff must establish that the "defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided" to his detriment. *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 96 (E.D.N.Y. 2000) (quoting *Grammar v. Turits*, 706 N.Y.S.2d 453 (2d Dep't 2000)).

As with his libel claim, Plaintiff's negligent misrepresentation claim must fail. Plaintiff has failed to identify any allegedly false statement that Defendants made. If Plaintiff does in fact have a criminal record in the jurisdictions searched, then Defendants' statement could potentially be seen as false or incorrect. It is unclear, however, how Plaintiff could be harmed in such a scenario.

Accordingly, the Court finds that Defendants are entitled to judgment in their favor as to Plaintiff's first cause of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: December 6, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge